UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | )  |  |
|---|---|---|
| **Cheryl Bradley,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 14-cv-01444 (APM) |
| | ) | |
| **DC Public Schools,** *et al.*, | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

I.  **INTRODUCTION**

Plaintiff Cheryl Bradley sued Defendant District of Columbia Public Schools ("DCPS") and four of its officials[1] based on events that began with an alleged workplace injury and ended with the alleged wrongful termination of her employment. Plaintiff asserts six causes of action against DCPS and the individual defendants: (1) deprivation of her federal constitutional and statutory rights in violation of 42 U.S.C. § 1983; (2) employment discrimination based on her disability in violation of Title I of the Americans with Disabilities Act ("ADA"); (3) retaliation in violation of Title IV of the ADA; (4) employment discrimination based on her disability in violation of the District of Columbia Human Rights Act ("DCHRA"); (5) retaliation in violation of the DCHRA; and (6) constructive discharge in violation of the District of Columbia Administrative Procedure Act ("DCAPA"). Before the court is Defendants' Partial Motion to

---

[1] The individual defendants and their titles during the relevant time periods are: Kayla Henderson, Chancellor; Norma Villanueva, Special Education Program Director; Erin K. Pitts, Director of Labor Management and Employee Relations; Regina Youngblood, Director of Human Resources; and Crystal Jefferson, Deputy Chief of Human Resources. Am. Compl. ¶¶ 8-13.

Dismiss the Amended Complaint. Defendants seek to dismiss the section 1983 (Count I) and the DCAPA (Count VI) counts for failure to state a claim. Additionally, the four individual defendants, each of whom is sued only in her "official capacity," request dismissal of the complaint in its entirety on the ground that all counts against them are duplicative of the counts against DCPS. In her opposition brief, Plaintiff concedes her claims against the individual defendants, but seeks leave to amend her complaint to sue them in their individual capacities.

After considering the parties' arguments and the applicable law, the court grants Defendants' Partial Motion to Dismiss, and denies Plaintiff's request for leave to amend her complaint.

## II.   BACKGROUND

### A.   Facts Alleged in the Complaint

Ms. Bradley began working for DCPS in August 2004. Am. Compl. ¶ 6, ECF No. 4. She later was promoted in the Office of Special Education to the position of Teacher of Special Education Specialists, a position that does not involve directly supervising or interacting with special education students. *Id.* ¶¶ 7, 15. Though not part of her job description, in April 2009, DCPS asked Ms. Bradley to supervise a special education classroom. *Id.* ¶ 15. During the class, an emotionally disturbed student elbowed Ms. Bradley in the chest, causing her to be rushed to the emergency room where she was diagnosed with a chest wall injury and contusion. *Id.* ¶¶ 15-18. An orthopedist subsequently diagnosed Ms. Bradley as suffering from a "right chest wall contusion as well as costochondritis, rib fracture, and intercostal neuralgia." *Id.* ¶ 19. Following doctors' orders, Ms. Bradley took a leave of absence until January 19, 2010, after which she returned to work at DCPS. *Id.* ¶¶ 20-22.

A year later, in February 2011, DCPS again asked Ms. Bradley to teach in a special education classroom. *Id.* ¶ 23. On February 24, 2011, because of a colleague's absence, Ms. Bradley taught two classrooms full of special education children. *Id.* ¶ 24. Exposed to their "restless and aggressive nature," Ms. Bradley experienced "extreme anxiety and flashbacks from her assault in 2009." *Id.* ¶ 25. Doctors diagnosed her with Adjustment Disorder with Mixed Anxiety, Depressed Mood, and Post-Traumatic Stress Disorder. *Id.* ¶ 26.

In March 2011, Ms. Bradley filled out a series of forms addressed to the District of Columbia Office of Risk Management ("Office of Risk Management"), reporting the re-aggravation of her injury and requesting disability compensation as well as advanced sick leave. *Id.* ¶¶ 31-35; Compl., Ex. K, ECF No. 2-1 at 125-29. After receiving conflicting responses from the Office of Risk Management about the receipt and processing of her claims, Ms. Bradley filed additional forms with the Office of Risk Management in May 2011 and submitted a request in early June 2011 for a hearing with the District of Columbia Department of Employee Services ("DOES"). Am. Compl. ¶¶ 37-46. When her claims went unaddressed, in July 2011, Ms. Bradley filed a formal charge of discrimination against DCPS and the Office of Risk Management with the Equal Employment Opportunity Commission ("EEOC"), citing discriminatory practices with respect to her disability. *Id.* ¶¶ 48. Through the fall of 2011, with the assistance of counsel, Ms. Bradley continued to try to secure a hearing before DOES. *Id.* ¶¶ 49-56. She was unable to secure a hearing, however, because she lacked a Notice of Determination from the Office of Risk Management. *Id.*

In late November 2011, Ms. Bradley received a termination notice from DCPS. *Id.* ¶ 57. Yet, only days later, on December 6, 2011, she received a Notice of Personal Action approving her request for extended leave through March 4, 2012. *Id.* ¶ 58. The next spring, in April 2012,

Ms. Bradley received a notice to report for fingerprinting to obtain a background clearance to return to work. *Id.* ¶¶ 62-63.  The notice stated:  "Failure to report for fingerprinting during this time period will be taken as your voluntary resignation as an employee of DC Public Schools." Compl., Ex. LL.  Also in April 2012, Ms. Bradley's treating psychiatrist sent notices to Defendant Erin Pitts, the Director of Labor Management and Employee Relations, stating that Ms. Bradley would be able to return to work but would have to be reintegrated gradually over four to six months.  Am. Compl. ¶¶ 61, 64.  When Ms. Bradley did not report for fingerprinting, Ms. Pitts treated her non-appearance as a "voluntary resignation." *Id.* ¶¶ 66-67.  According to Ms. Bradley, she had no intention of resigning from her position; she only sought accommodation from DCPS and instead was wrongfully terminated.  *Id.* ¶ 66-69.

### III.   LEGAL STANDARD

Following the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a complaint must contain "sufficient *factual matter*, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (emphasis added) (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).  The pleaded factual content must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  On the other hand, a complaint that pleads factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  While the factual allegations need not be "detailed," the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the plaintiff's factual allegations and "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citations omitted) (internal quotation marks omitted). However, the court will not "accept inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Id.* (citations omitted).

## IV. ANALYSIS

### A. Count I: Municipal Liability Under 42 U.S.C. § 1983

Plaintiff's claim under section 1983 against DCPS rests on the theory of "municipal liability." *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "[I]n considering whether a plaintiff has stated a claim for municipal liability, the district court must conduct a two-step inquiry." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citations omitted). The court first must decide whether the complaint states a predicate violation of a constitutional or federal statutory right. *Id.* If so, then the court must determine if the complaint "states a claim that a custom or policy of the municipality caused the violation." *Id.* The court here need not decide whether Plaintiff has satisfied the first step,[2] because she has not met the second.

---

[2] Plaintiff does not specify the violation of any *constitutional* right. *See* Am. Compl. ¶¶ 75-76. As for an alleged violation of a federal statutory right, her complaint asserts violations of Title I and IV of the ADA, Am. Compl. ¶¶ 79-115, and her Opposition contends a violation of Title VII, Section 704(a) of the Civil Rights Act of 1964. *See* Pl.'s Opp'n at 5. It is unlikely that those alleged statutory violations could support a separate claim under section 1983. *See, e.g.*, 1 Americans with Disab.: Pract. & Compliance Manual § 2:52 ("Most courts have held that rights under

A plaintiff can show that a municipality's policy or custom caused a constitutional or statutory violation in one of three ways: (1) the municipality "explicitly adopted the policy that was 'the moving force of the constitutional violation,'" *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (quoting *Monell*, 436 U.S. at 694 and citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-30 (1988)); (2) a policymaker "knowingly ignore[d] a practice that was consistent enough to constitute custom," *id.* (citing *Praprotnik*, 485 U.S. at 130); or (3) the municipality neglected to respond "to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations," *id.* (quoting *Baker*, 326 F.3d at 1306) (internal quotation marks omitted). Plaintiff's argument rests on the last of the three theories. She claims:

> Plaintiff Bradley . . . has plausibly identified the challenged practices here, namely, the Defendants['] clear indifference to the Plaintiff's rights and the Defendant District of Columbia's failure to train and supervise as the alleged retaliation against Plaintiff Bradley was not one instance but a repeated pattern of actions of failure to communicate, failure to provide documentation, failure to provide benefits to which Plaintiff was entitled, and finally the improper and unjustified termination, "re-hiring", and "voluntary resignation" determinations.

Pl.'s Opp'n at 15-16 (citing Am. Compl. ¶¶ 57-69).

A theory of "deliberate indifference" requires a showing that the municipality "knew or should have known of the risk of constitutional violations, but did not act." *Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir. 2011) (quoting *Baker*, 326 F.3d at 1306) (internal quotation marks omitted); *Warren*, 353 F.3d at 39 ("[F]aced with actual or constructive knowledge that its agents

---

Title II, Part A of the [ADA], which contains its own remedial scheme, may not be used as the basis for a claim under [section 1983].") (collecting cases) (footnote omitted); *Jones v. District of Columbia*, 879 F. Supp. 2d 69, 87 (D.D.C. 2012) ("[W]hen the only § 1983 cause of action is based on a violation of Title VII, a plaintiff's exclusive remedy is provided by Title VII.") (citation omitted). Regardless, the claim cannot survive a motion to dismiss because Plaintiff has failed to plead that a District policy or custom caused the violation.

will probably violate constitutional rights, the city may not adopt a policy of inaction.").[3] Deliberate indifference can be shown by a municipality's failure to adequately train its employees. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (citations omitted). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 1359 (citations omitted). Thus, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* (citations omitted) (internal quotation marks omitted).

Ms. Bradley's complaint fails to plead municipal liability under a theory of deliberate indifference for two reasons. First, her assertions of "indifference" and "failure to train," Pl.'s Opp'n at 15-16, are conclusory; they are not based on allegations of fact. For example, though she relies on a "failure to train" theory, Ms. Bradley has not identified any "particular omission" in the District's training programs that led to a violation of her rights. *See Connick*, 131 S. Ct. at 1360. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*; *see also Runnymede-Piper v. District of Columbia*, 952 F. Supp. 2d 52, 58 (D.D.C. 2013) (granting motion to dismiss where plaintiff alleged "nothing more than conclusory allegations of negligent training and supervision, while including no facts—none—

---

[3] In *Warren*, the D.C. Circuit held that municipal liability was sufficiently pled even where the "allegation of actual or constructive knowledge on the part of the District was conclusory." 353 F.3d at 39. However, *Warren* preceded *Twombly* and *Iqbal*, and this court must follow those Supreme Court decisions. *See Smith v. District of Columbia*, 674 F. Supp. 2d 209, 213 n.2 (D.D.C. 2009).

7

suggesting that the District Defendants knew or should have known of any deficiencies in the training "); *Matthews v. District of Columbia*, 924 F. Supp. 2d 115, 121-22 (D.D.C. 2013) (granting summary judgment in District's favor where "plaintiffs provide no information about the training the District offered"); *Costello v. District of Columbia*, 826 F. Supp. 2d 221, 225-26 (D.D.C. 2011) (rejecting *Monell* claim where "the plaintiffs have alleged in conclusory terms that the District failed to train its officers" but "pleaded no *facts* indicating that the District's decisionmakers knew or should have known of any deficiencies in the training of its police officers").

Second, Ms. Bradley has not alleged that the District violated anyone's rights other than her own. Plaintiff thus has failed to plead the "pattern of similar constitutional violations by untrained employees" that is "'ordinarily necessary'" to show deliberate indifference. *See Connick*, 131 S. Ct. at 1360 (citation omitted); *see also Costello*, 826 F. Supp. 2d at 226 (rejecting *Monell* liability on failure-to-train theory where plaintiffs "rel[ied] solely upon the alleged unconstitutional search of their apartment as the basis for their claim against the District"). Plaintiff's section 1983 claim against DCPS therefore must be dismissed.

### B. Count VI: Liability Under the District of Columbia Administrative Procedure Act

Plaintiff's claim under the DCAPA likewise fails to state a claim. The DCAPA provides that "[a]ny person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a contested case, is entitled to a judicial review[.]" D.C. Code § 2-510(a) (2001). The statute excludes from the definition of "contested case" "[t]he selection or tenure of an officer or employee of the District." D.C. Code § 2-502(8). Because Ms. Bradley's alleged constructive discharge falls squarely within the exclusion for decisions concerning "selection or tenure" of an employee, hers is not a "contested case" for which the DCAPA affords judicial review. *See Wells v. District of Columbia Bd. of Educ.*, 386 A.2d 703,

706 (D.C. 1998) (stating that the DCAPA's "selection or tenure" exclusion "encompasses most personnel matters"); *Matala v. Washington*, 276 A.2d 126, 128 (D.C. 1971) (per curiam) (holding that the court does not have jurisdiction to review the findings and recommendation of the Metropolitan Police Special Trial Board, because the Board's authority includes power to recommend the officer's suspension or dismissal, which would clearly involve his "tenure" and thereby preclude judicial review). Count VI of Plaintiff's complaint is thus dismissed.

### C. Plaintiff's Request for Leave to Amend Her Complaint

Plaintiff concedes that, because her claims against the individual defendants in their "official capacities" are duplicative of her claims against the District, they fail to state a claim. Pl.'s Opp'n at 22. Nevertheless, she seeks leave to amend her complaint to bring suit against them in their individual capacities. *Id.* Defendants point out, correctly, that Plaintiff's request should be denied for failure to comply with this court's Local Rule 15.1, which requires that a motion for leave to amend be accompanied by the proposed amended pleading. *See* Defs.' Reply, ECF No. 13 at 3 (citing Local Rule 15.1). Plaintiff's request for leave to amend is therefore denied.

### V. CONCLUSION AND ORDER

For the foregoing reasons, Defendants' Partial Motion to Dismiss is granted and Plaintiff's request for leave to amend the complaint is denied. Counts I and VI of Plaintiff's Amended Complaint are hereby dismissed as to DCPS, and the complaint is dismissed in its entirety as to the four individual defendants.

Dated: April 3, 2015

Amit P. Mehta  
United States District Judge