# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                         )

**Cherryl Bradley,**                         )

                               )

        **Plaintiff,**                    )

                               )

        **v.**                          )      **Civil No. 14-cv-01444 (APM)**

                               )

**District of Columbia Public Schools,**     )

                               )

        **Defendant.**                  )

                               )
_____ )

## MEMORANDUM OPINION AND ORDER

## I.     INTRODUCTION

Plaintiff Cherryl Bradley filed this lawsuit against her former employer, Defendant District of Columbia Public Schools ("DCPS"), asserting that Defendant failed to accommodate her disability and wrongfully terminated her employment.  Plaintiff initially brought six claims, including violation of her constitutional and statutory rights under 42 U.S.C. § 1983, discrimination and retaliation in violation of federal and District of Columbia law, and constructive discharge under District of Columbia law.  The court dismissed her claims under section 1983 and the District of Columbia Administrative Procedure Act.  *See Bradley v. D.C. Pub. Sch.*, 87 F. Supp. 3d 156 (D.D.C. 2015).  The court now addresses Plaintiff's remaining claims for discrimination and retaliation under the Americans with Disabilities Act ("ADA"), and the District of Columbia Human Rights Act ("DCHRA").

This case is before the court in a unique posture—on *Plaintiff's* Motion for Summary Judgment.  Plaintiff therefore bears the heavy burden of showing that a reasonable jury could reach

only one conclusion based on the record evidence—that Defendant failed to reasonably accommodate her disability and terminated her because of her disability and request for reasonable accommodation.  The court finds that Plaintiff has not satisfied this burden and, therefore, denies her Motion for Summary Judgment.

## II.     BACKGROUND

### A.     Factual Background

Plaintiff Cherryl Bradley began work as a special education specialist for Defendant in 2004.  Pl.'s Mem. in Supp. of Mot. for Summ. J., ECF No. 32-1 [hereinafter Pl.'s Mot.], at 1, 11; Pl.'s Stmt. of Undisputed Material Facts, ECF No. 32-2 [hereinafter Pl.'s Stmt.], ¶ 3; Def.'s Opp'n to Pl.'s Mot. for Summ. J., Ex. A, Def.'s Resp. to Pl.'s Stmt., ECF No. 35-2 [hereinafter Def.'s Resp.], ¶¶ 3–4.  In April 2009, while Plaintiff was substitute teaching, a student violently elbowed her in the chest, causing her serious injuries and preventing her from returning to work until January 2010.  Pl.'s Stmt. ¶¶ 12–19; Def.'s Resp. ¶¶ 12–19.

About one year later, Defendant again assigned Plaintiff to substitute teach in a special education classroom.  Exposure to the students caused Plaintiff to flash back to the 2009 battery and gave her extreme anxiety.  Pl.'s Stmt. ¶¶ 20–24.  Plaintiff sought medical assistance and was diagnosed with Adjustment Disorder with Mixed Anxiety, Depressed Mood, and Post-Traumatic Stress Disorder.  Pl.'s Mot. at 1; Def.'s Resp. ¶ 23.

In March 2011, Plaintiff sought disability compensation and sick leave.  Pl.'s Stmt. ¶¶ 25–28; Def.'s Resp. ¶ 27–28.  After her claim went unaddressed, Plaintiff filed a formal charge of discrimination in July 2011 with the Equal Employment Opportunity Commission against both Defendant and the District of Columbia Office of Risk Management, citing discriminatory practices with respect to her disability.  *See* Receipt of Original Case File, ECF No. 2, Superior

Court Documents, ECF No. 2-1 [hereinafter Super. Ct. Docs.], at 155–56 (Ex. BB, Charge of Discrimination); Pl.'s Stmt. ¶¶ 27–31, 45; Def.'s Resp. ¶¶ 27–31, 45. Eventually, in December 2011, Defendant granted Plaintiff extended leave until March 4, 2012. Super. Ct. Docs. at 161–62 (Ex. HH, Letter from Erin K. Pitts to Cherryl Bradley (Dec. 6, 2011)); Pl.'s Stmt. ¶ 56; Def.'s Resp. ¶ 56.

On April 10, 2012, Paul Webb, Manager of Staffing Services for Defendant, sent Plaintiff a letter "regarding [her] return to work for DC Public Schools." *See* Super. Ct. Docs. at 168 (Ex. LL, Letter from Paul Webb to Cherryl Bradley (Apr. 10, 2012)). Webb advised Plaintiff that "[t]he first step is obtaining the necessary background clearance. You are required to come in for fingerprinting . . . . Once your fingerprints have cleared, we can move forward with your placement." *Id.* The letter warned that the "[f]ailure to report for fingerprinting . . . will be taken as your voluntary resignation as an employee of DC Public Schools." *Id.*

The same month, Plaintiff's treating psychiatrist sent a letter to Defendant, stating that Plaintiff "currently cannot perform any of the job functions listed related to the job description until her anticipated recovery which can be anywhere between 4–6 months." *See id.* at 169 (Ex. MM, Letter from Sheryl Neverson (Apr. 16, 2012)); Pl.'s Stmt. ¶ 62; Def.'s Resp. ¶ 62. The letter included a diagnosis form in which her physician opined that Plaintiff "needs to work on reasonable accommodations for her [to] return to work because returning to the position that she left a year ago can further injur[e] [Plaintiff]." Super. Ct. Docs. at 171 (Ex. MM, Medical Diagnosis of Cherryl Bradley).

When Plaintiff did not appear at her scheduled fingerprinting appointment, DCPS terminated her. *Id.* at 172 (Ex. PP, Notification of Personnel Action); Pl.'s Stmt. ¶¶ 64–66; Def.'s Resp. ¶¶ 64, 66.

### B.       Procedural Background

Plaintiff filed a Complaint in D.C. Superior Court in May 2014.   Notice of Removal, ECF No. 1, Pl.'s Compl., ECF. No. 1-2 [hereinafter Compl.], at 4–34.   Plaintiff then filed an Amended Complaint in this court on September 22, 2014, alleging deprivation of her constitutional and statutory rights, in violation of 42 U.S.C. § 1983 (Count I); discrimination and retaliation in violation of the ADA and DCHRA (Counts II, III, IV, and V); and discharge in violation of the D.C. Administrative Procedure Act (Count VI).   On April 3, 2015, the court dismissed Counts I and VI.   *See Bradley*, 87 F. Supp. 3d at 158.   Plaintiff thus has four remaining claims: (1) employment discrimination based on her disability under the ADA (Count II); (2) retaliation under the ADA (Count III); (3) employment discrimination based on her disability under the DCHRA (Count IV); and (4) retaliation under the DCHRA (Count V).

Before the court is Plaintiff's Motion for Summary Judgment.   *See* Pl.'s Mot for Summ. J., ECF No. 32.   Based on the undisputed material facts, she contends that a reasonable jury could reach only one conclusion—that Defendant failed to accommodate her disability and terminated her for exercising her protected rights under the ADA and DCHRA.   *See* Pl.'s Mot. at 7, 19, 21. In its opposition brief, Defendant argues that three disputed material facts—whether Plaintiff's job required her to work in the classroom, whether Plaintiff sought an accommodation, and whether Defendant terminated Plaintiff for a discriminatory reason—preclude an entry of summary judgment in Plaintiff's favor on any count.   *See* Def.'s Opp'n at 2–3.

## III.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide that a court should grant summary judgment if "there is no genuine dispute as to any material fact and [the moving party] is entitled to judgment

as a matter of law." Fed. R. Civ. Pro. 56(a). A material fact is one capable of affecting the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Rule 56 provides for a court to enter summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and identifying those portions of the record that it believes "demonstrate the absence of a genuine issue of material fact." *Id*. at 323.

Once the moving party has made an adequate showing that a fact cannot be disputed, the burden shifts to the party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks omitted). The nonmoving party may oppose the motion using "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which [the Court has] referred." *Celotex Corp.*, 477 U.S. at 324. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citation omitted). However, "[t]o defeat a motion for summary judgment, the non-moving party must offer more than mere unsupported allegations or denials." *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 17 (D.D.C. 2011) (citing *Celotex*, 477 U.S. at 324). In other words, if the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50. Summary judgment, then, is appropriate when the non-moving

party fails to offer "evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

## IV.   DISCUSSION

Plaintiff's four remaining claims fall into two categories: (1) denial of reasonable accommodation, in violation of Title I of the ADA (Count II) and the DCHRA (Count IV); and (2) retaliatory termination due to her disability and for engaging in protected activity, in violation of Title IV of the ADA (Count III) and the DCHRA (Count V).  *See* Am. Compl. ¶¶ 112–14.  The court considers each group of claims in turn.

### A.      Plaintiff's Reasonable Accommodation Claims

The ADA prohibits any covered employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).[1]  Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise

---

[1] Plaintiff also asserts her failure-to-accommodate claim under the DCHRA, *see* Am. Compl. ¶¶ 116–120, which makes it unlawful for an employer:

> [t]o fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee.

D.C. Code § 2-1402.11.  The legal standards applicable to Plaintiff's claims under the ADA and the DCHRA are the same.  *See Giles v. Transit Employees Credit Union*, 32 F. Supp. 3d 66, 70 (D.D.C. 2014) ("claims arising under the [DCHRA] are analyzed in the same manner as an ADA claim") *aff'd sub nom. Giles v. Transit Employees Fed. Credit Union*, 794 F.3d 1 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 1171 (2016); *Grant v. May Dep't Stores Co.*, 786 A.2d 580, 583–84 (D.C. 2001) ("We have considered decisions construing the ADA as persuasive in our decisions construing comparable sections of DCHRA").  The court thus considers Plaintiff's claims under the ADA and the DCHRA in tandem.

qualified individual with a disability who is an applicant or employee."   42 U.S.C. § 12112(b)(5)(A).

To prevail on summary judgment on a failure-to-accommodate claim under the ADA, Plaintiff must show that there is no genuine dispute of material fact that: "(i) she was disabled within the meaning of the [ADA]; (ii) her employer had notice of her disability; (iii) she was able to perform the essential functions of her job with or without reasonable accommodation; and (iv) her employer denied her request for a reasonable accommodation of that disability." *Solomon v. Vilsack*, 763 F.3d 1, 9 (D.C. Cir. 2014) (citations omitted).

Plaintiff argues that she is entitled to summary judgment because "the undisputed facts show that [she] is a person with a disability who was able to perform the essential functions of her job, that the School District was on notice of [her] disability and that the School District denied her request for reasonable accommodation, thereby discriminating against her."   Pl.'s Mot. at 7. Accordingly, Plaintiff argues, she satisfies all four requirements for summary judgment to be entered in her favor.

Defendant concedes that Plaintiff was a person with a qualifying disability during the relevant period.   It contends, however, that summary judgment is inappropriate because there is a genuine dispute of fact as to whether Plaintiff's disability rendered her unable to work in the classroom, which Defendant asserts is an "essential function of a special education specialist." Def.'s Opp'n at 4–5; Def.'s Stmt. of Material Facts in Dispute, ECF No. 35-3 [hereinafter Def.'s Stmt.], ¶ 2.   Plaintiff, for her part, does *not* counter that she would have been able to perform classroom duties had she been given reasonable accommodation.   Instead, Plaintiff maintains that the essential functions of her job were to "create programs, instructions, prepare reports, conduct research, etc.[,] in order to assist special education teachers"—not to be in a classroom.   Pl.'s Reply

to Def.'s Opp'n, ECF No. 37 [hereinafter Pl.'s Reply], at 6. According to Plaintiff, because teaching in a classroom is not an essential function of her position, her inability to teach in a classroom even with reasonable accommodation is not fatal to her claim.

Both sides point to a single piece of evidence to support their respective positions—the written job description for a special education specialist. *See* Super. Ct. Docs. at 195 (Ex. VV, Job Description—Special Education Specialist); Def's Stmt. ¶ 1; Pl.'s Reply at 3–6. That job description consists of a list of 16 bullet-pointed responsibilities. *Id.* The sixteenth bullet-point states as follows: "[T]he Special Education Specialist . . . [p]erforms other duties as assigned to include but not limited to . . . *substitute teaching* or modeling effective specialized instruction in special education classrooms and programs[.]" Super. Ct. Docs. at 195 (Ex. VV, Job Description—Special Education Specialist) (emphasis added).

Plaintiff insists that, notwithstanding the plain inclusion of substitute teaching within the relevant job description, classroom work is not an essential function of the position. *See* Pl.'s Reply, at 4–6. Her argument rests solely on the text of the job description itself. She asserts that the order in which the job duties are listed—with developing programs, preparing reports, and conducting research placed near the top of the list, and substitute teaching listed at the bottom—corresponds to the essential nature of each duty. *Id.* Put another way, Plaintiff argues that it would strain credibility to find that the sixteenth most important job function could possibly be considered "essential." She also contends that the "or" separating "substitute teaching" and "modeling effective specialized instruction in special education classrooms and programs" allows for employees to choose either to substitute teach *or* model effective instruction outside of the classroom, further supporting her contention that teaching is not an essential function of her job. *Id.* at 5.

The problem with Plaintiff's argument, however, is that it is premised on the wholly speculative assumption that where a particular responsibility or function appears within the bullet-pointed list equates to its centrality to the job.  There is no evidence on the record to support that assumption.  Plaintiff could have offered testimonial evidence from someone in a position to interpret the relative importance of special education specialist's job duties, but she did not do so.  Indeed, the written job description could support the equally plausible inference that each of the bullet points constitutes an essential part of the position and that the sequence is wholly irrelevant.  Absent any testimony about how the job description applies in practice, there exists a genuine dispute of fact about whether classroom work is an essential part of the job.  Accordingly, the court cannot conclude that, as a matter of law, Plaintiff was denied reasonable accommodation for her disability.  Summary judgment is denied as to Plaintiff's failure-to-accommodate claims.[2]

### B.     Claims Arising Out of Plaintiff's Termination

Turning to Plaintiff's retaliation claims, Plaintiff puts forward two theories of liability arising out of her termination.  First, she claims that Defendant fired her because of her disability.  Pl.'s Mot. at 11–13.  Second, she maintains that Defendant terminated her because she exercised her right to seek reasonable accommodation.  *Id.* at 21.  Defendant counters that it did not terminate Plaintiff for either asserted reason, and instead claims that it terminated Plaintiff for a legitimate reason—Plaintiff's failure to show up for fingerprinting.  *See* Def.'s Opp'n at 6.

The Court of Appeals has made clear that once, as here, an employer provides a legitimate, nondiscriminatory or nonretaliatory reason for an adverse employment action, the court is left with "one central inquiry" on summary judgment.  *Adeyemi v. District of Columbia*, 525 F.3d 1222,

---

[2] Defendant also maintains that granting summary judgment would be improper because there is a genuine dispute as to whether Plaintiff ever requested reasonable accommodation.  Def.'s Opp'n at 3.  Because the court finds there is a genuine dispute of material fact about the essential functions of Plaintiff's job, the court need not reach this alternative ground.

1226 (D.C. Cir. 2008).  Ordinarily, because the *employer* is the movant, that inquiry is "whether the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory or non-retaliatory reason was not the actual reason and that the employer intentionally discriminated or retaliated against the employee." *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015) (alterations adopted and internal quotation marks omitted).  Here, the central inquiry differs slightly because the *employee* is the movant.  Accordingly, the court must ask whether, based on all the record evidence, a reasonable jury could reach no conclusion other than that the employer's stated reason was not the actual reason for the plaintiff's termination and that, in fact, the employer "intentionally discriminated against the plaintiff on a prohibited basis." *Adeyemi*, 525 F.3d at 1226.

Framed in that way, the burden that Plaintiff faces here is a heavy one, and she has not met it.  Determining the true reason or cause for Plaintiff's firing demands an examination of Defendant's intent—and "intent is a quintessential jury question."  *See SEC v. Johnson*, 525 F. Supp. 2d 70, 78 (D.D.C. 2007).  Plaintiff argues that the proximity in time between her protected activity and the adverse employment action alone establishes the causation required for a retaliation claim.  Pl.'s Mot. at 19–21.  But the Court of Appeals has held that, when an *employer* moves for summary judgment, the temporal proximity between an employee's protected activity and an adverse employment action is not enough to enable the plaintiff to defeat summary judgment. *See Minter v. District of Columbia*, 809 F.3d 66, 71–72 (D.C. Cir. 2015) (stating that "when an employer comes forward with a legitimate, nonretaliatory reason for an employment action, positive evidence beyond mere proximity is required to create a genuine issue of material fact" about the employer's motive for taking the adverse action (internal quotation marks omitted)).  If mere temporal proximity is insufficient to overcome an employer's motion for

summary judgment, then it certainly is not enough to enter judgment as a matter of law in favor of a plaintiff.

Therefore, the court denies Plaintiff's Motion for Summary Judgment on her discrimination and retaliation claims.

## V.      CONCLUSION AND ORDER

For the foregoing reasons, the court denies Plaintiff's Motion for Summary Judgment.

Dated:  November 1, 2016                          Amit P. Mehta
                                                 United States District Judge